IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RANDY BRYANT WICK,<br><br>Plaintiff,<br><br>vs.<br><br>MISSOULA POLICE OFFICERS CAMPBELL, HOUPPERT and MARTINI,<br><br>Defendants. | CV 17-148-M-DLC-JCL<br><br>FINDINGS AND RECOMMENDATION |

Before the Court is Defendant Police Officers Robert Campbell, Mar'Kee Houppert and John Martini's Fed. R. Civ. P. 56 motion for summary judgment requesting the Court dismiss this action. Plaintiff Randy Wick, appearing pro se, has not filed a brief in response to Defendants' motion. For the reasons discussed, the Court recommends the motion be granted and this action be dismissed.

## I. Background

Wick states that Defendant City of Missoula Police Officers Campbell, Houppert, and Martini arrested him in Missoula, Montana on January 24, 2015. He alleges the Officers first discharged a taser on his stomach and left thigh, and he fell face down on the sidewalk and against a wall. Then Defendant Campbell allegedly discharged his taser a second time on Wick's back and right calf. Wick

1

further alleges Defendants Houppert and Martini had their knees on his back, and that they pulled his arms causing injury to both of his shoulders and back. Wick alleges Defendants' conduct violated his rights protected under the United States Constitution.

Wick's claims are cognizable under 42 U.S.C. § 1983. Therefore, his allegations invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331.

Defendants move for summary judgment dismissing Wick's claims of excessive force. They argue, in part, that the doctrine of qualified immunity protects them from liability under the events and circumstances surrounding Wick's arrest. For the reasons discussed, the Court agrees.

## II.   Applicable Law - Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

As noted, Wick did not file a brief in opposition to Defendants' motion for summary judgment, and the time for doing so has passed. Nonetheless, the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition or violates a local rule," and the court must "analyze the record to determine whether any disputed material fact [is] present." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010). *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (explaining that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law").

Finally, because Wick is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Defendants' summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.  Discussion

On January 24, 2015, Officer Campbell was on duty while at the Oxford Cafe in Missoula, Montana. He was called outside the cafe where he observed Wick threatening two individuals with a pocket knife, yelling profanities at the two men, and demanding that they repay money to him. (Doc. 31-1 at ¶ 5.) When Campbell identified himself as a police officer, Wick put the pocket knife away

and started walking away. (*Id.* at ¶ 7.) Campbell directed Wick to stop, and to keep his hands out, but Wick refused. Wick told Campbell "he was not going to do shit", and kept walking away. (*Id.* at ¶ 8.)

Campbell pursued Wick and ordered him to stop. Campbell displayed his taser to Wick, and showed a "warning arc." (Doc. 31-1 at ¶ 9.) Wick stopped with his back against a wall. Campbell told Wick he was under arrest, directed him to put his hands behind his back, and warned Wick that if he failed to comply Campbell would use his taser on Wick. (*Id.*) Wick did not comply with Campbell's instructions. Campbell states that because he knew Wick had a knife, and because Wick refused to obey his commands, he decided to deploy his taser probes to Wick's left torso. He did so, and Wick fell to the ground. (Doc. 31-1 at ¶ 10.) The taser deployed for a five-second duration. (*Id.* at ¶ 12.)

Houppert and Martini were on the scene to assist Campbell. Martini observed Wick screaming profanities, being uncooperative and belligerent towards Campbell, and refusing to comply with Campbell's commands. (Doc. 31-2 at ¶ 3.) After Campbell deployed his taser, Houppert and Martini attempted to arrest Wick and put him in handcuffs, but Wick continued to struggle and resist their efforts. (Doc. 31-1 at ¶ 13.) The officers commanded Wick to comply with their instructions to submit to the handcuffs and his arrest, and they warned him of

consequences if he failed to comply and continued to resist their efforts. (Doc. 31-1 at ¶¶ 14-15.)

Campbell knew Wick was still in possession of the pocket knife, and he states he was concerned the taser probes from the initial discharge of the taser may have disconnected because the probes were underneath Wick and against the sidewalk. (Doc. 31-1 at ¶¶ 14-15.) Therefore, Campbell discharged his taser a second time on Wick's calf. (Doc. 31-1 at ¶ 15.) The second discharge of the taser was 19 seconds after the first discharge, and it lasted 5 seconds. (Doc. 31-1 at ¶ 14.) After the second discharge the officers were then able to get the handcuffs on Wick.

Wick informed Martini that he had back problems with surgical hardware in place. Therefore, Martini was careful helping get Wick up off the ground. (Doc. 31-2 at ¶ 6.) Martini asked Wick if he was in pain, and Wick told him he was not. (*Id*.) Wick never complained to either Martini or Houppert of any injury from the events surrounding his arrest. (*Id*. at ¶¶ 8-9; Doc. 31-3 at ¶5.)

After the officers brought Wick to his feet they searched him and seized his knife. They placed Wick in a patrol car and Martini transported him to the Missoula County Detention Center. (Doc. 31-2 at ¶ 5.)

As a result of Wick's conduct he was charged with criminal assault with a weapon. He pled guilty to the charge and was sentenced to prison. Wick later

moved to withdraw his guilty plea, but the state district court denied his motion. On appeal the Montana Supreme Court affirmed the district court's denial of Wick's motion, thereby upholding Wick's conviction. *State v. Wick*, 2018 WL 1940332 (Mont. 2018).

### A. Wick's Innocence

Section IV of Wick's amended complaint form solicited his description of any injuries he allegedly sustained from Defendants' conduct. In that section, he states he experienced mental duress, and that he has been "wondering why all this is happening to me an innocent disabled senor [sic] citizen. […] I can prove my innocents [sic] in annother [sic] case." (Doc. 10 at 5, section IV.)

In their summary judgment motion Defendants construe Wick's statement as a claim alleging he is innocent of his criminal assault conviction, and they request summary judgment dismissing the claim. The Court agrees the dismissal of the claim is warranted.

As noted, Wick's assault conviction still stands as a valid conviction. Where a plaintiff seeks to obtain relief in an action under 42 U.S.C. § 1983 for an alleged improper criminal conviction, the plaintiff must first establish that the subject conviction has been reversed or declared invalid through a habeas corpus action under 28 U.S.C. § 2254, or some other collateral challenge. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Thus, when a claim under § 1983 suggests or

necessarily implies that a current conviction is invalid, the claim must be dismissed. *Id*. Because Wick's conviction has not been reversed or invalidated, his claim that he is innocent must be dismissed.

### **B. Excessive Force – Qualified Immunity**

Defendants move for summary judgment dismissing Wick's claim of excessive force pursuant to the doctrine of qualified immunity. Qualified immunity renders a law enforcement officer immune from liability when the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, ___U.S. ___, 137 S. Ct. 548, 551 (2017) (citation and quotation omitted). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (citation and quotation omitted). "These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

Wick's claim against each Defendant asserts they used excessive force against him when they deployed a taser twice, and allegedly placed their knees on

his back and pulled his arms back to put handcuffs on him. Wick's claims implicate his rights under the Fourth Amendment to the United States Constitution.

As a preliminary matter, the Court first confirms the constitutionality of Defendants' conduct leading up to, and permitting their use of any force at all. Campbell witnessed Wick threaten two individuals with a knife and, therefore, possessed probable cause to believe Wick committed the offense of assault with a weapon in violation of Mont. Code Ann. § 45-5-213. Therefore, Defendants possessed the constitutional authority to arrest Wick. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). And an officer's authority to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

With that background, the determinative question is whether Defendants' use of force – the discharge of a taser twice, and the physical manipulation of Wick's arms to apply handcuffs – was excessive in violation of Wick's right to be free from unreasonable seizures protected under the Fourth Amendment. *Graham*, 490 U.S. at 394-95. The Fourth Amendment prohibits an officer from exceeding "the bounds of reasonable force in effecting 'an arrest, investigatory stop, or other seizure.'" *Shafer*, 868 F.3d at1116 (quoting *Graham*, 490 U.S. at 395-96).

The federal courts must analyze excessive force claims "according to the constitutional touchstone of objective reasonableness," and may not take into

account an "officer's subjective 'intent or motivation.'" *Shafer*, 868 F.3d at 1116 (quoting *Graham*, 490 U.S. at 397). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Id*.

The determination of objective reasonableness requires the courts "to balance the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Shafer*, at 1116 (quoting *Graham*, at 396). The courts have identified a non-exclusive list of three factors to consider when balancing the referenced competing interests: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Id*.

Finally, a court must judge the reasonableness of the force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Shafer*, at 1116 (quoting *Graham*, at 396). The officer's perspective is necessary because officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, at 397.

Even assuming, without deciding, that Wick could establish Defendants used excessive force in violation of his Fourth Amendment rights under the foregoing analysis, Wick would still have to satisfy the second prong of the qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (confirming the court has discretion in deciding which of the two prongs of the qualified immunity analysis to address first). Defendants would be entitled to qualified immunity if Defendants' conduct, in the context of the specific facts and circumstances of the encounter between Wick and Defendants, did not violate a clearly established constitutional right of which a reasonable officer would have known. *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018). The analysis focuses on whether a reasonable officer would have had fair notice, based upon the existing decisional law at the time of the officer's conduct, that the specific conduct in which the officer engaged in response to specific circumstances was unconstitutional. *Id*.

In assessing whether any particular right at issue was clearly established, the right may "not be defined at a high level of generality." *White v. Pauly*, ___U.S. ___, 137 S. Ct. 548, 552 (2017) (citation and quotation omitted). Rather, the established right "must be 'particularized' to the facts of the case." *Id*. (citation omitted). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an

officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (citation omitted). A determination that a specific instance of the use of force was excessive can only be made based on the specific facts of each individual case. *Kisela*, 138 S. Ct. at 1153.

Although the Supreme Court does not require the existence of "a case directly on point" to create a clearly established right, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (citation and quotation omitted). "[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. There must exist legal precedent involving similar facts that would give a reasonable officer fair notice that a particular use of force in particular circumstances is unlawful. *Id*. A court cannot conclude that an officer "violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. (citation omitted). *See also Shafer*, 868 F.3d at 1117. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551 (citation and quotation omitted).

The Supreme Court has emphasized that to preclude the application of qualified immunity a court must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Shafer*, 868 F.3d at 1117 (quoting *White*, 137 S. Ct. at 552). *See also S.B. v. County of San Diego*, 864 F.3d 1010, 1015-16 (9th Cir. 2017). Thus, in this case the Court must find legal precedent that existed as of January 24, 2015, that would have put Defendants on clear notice that their conduct and the degree of force they used upon Wick in the circumstances Defendants faced constituted excessive force. *S.B.*, 864 F.3d at 1015.

Here, the question at hand under the second prong of the qualified immunity analysis is whether Defendants violated clearly established law when Campbell used the taser either the first or the second time, and when Houppert or Martini physically manipulated Wick's arms to put handcuffs on Wick's wrists. For the reasons discussed, the Court concludes Wick's rights in the specific circumstances of his arrest, were not clearly established, and reasonable officers in Defendants' positions would not have known that their conduct towards Wick violated his constitutional rights.

There are several Ninth Circuit decisions which provide instructive guidance as to an officer's use of a taser, and the contours of Wick's Fourth Amendment rights under the circumstances of his conduct in this case. Relative to Campbell's

use of his taser the first time to gain control of Wick following his defiance and non-compliance, the Ninth Circuit's decision in *Jones v. Las Vegas Metropolitan Police* Department, 873 F.3d 1123 (9th Cir. 2017) is helpful. Although the decision in *Jones* was issued on October 20, 2017, after the events in this case, it remains instructive as to what constituted reasonable use of a taser at the time of Wick's arrest.

In *Jones*, a Las Vegas police officer stopped the plaintiff for a routine traffic stop on December 11, 2010. The officer ordered the plaintiff out of the car, and although the plaintiff obeyed initially, he "started to turn towards" the officer. The plaintiff was "much larger" than the officer, so the officer drew his firearm on the plaintiff and directed him to turn around. At that point the plaintiff fled on foot.

The officer in the *Jones* case pursued the plaintiff and called for backup officers. Because the plaintiff had not threatened the officer, and the officer believed the plaintiff did not have any weapons, the officer elected to use his taser on the plaintiff while he waited for backup officers to arrive. He discharged his taser on plaintiff "to subdue" him. *Jones*, 873 F.3d at 1127. He "fired his taser twice" causing the plaintiff to "fall to the ground face down with his hands underneath him." *Id*. Under those specific circumstances, the Ninth Circuit concluded the officer's use of the taser – an intermediate level of force – in the manner he did to stop and subdue the fleeing plaintiff in order to place him under

arrest constituted a reasonable use force under those circumstances. *Id.*, 873 F.3d at 1130.[1]

The Ninth Circuit's October 20, 2017 decision in *Jones*, subsequent to Wick's arrest in this case, confirmed that even by 2017, the existing law deemed it reasonable for an officer to use a taser to stop and subdue a non-compliant, fleeing suspect who did not have a weapon and did not pose an immediate risk of harm. Thus, by October 2017, it still was not clearly established that the use of taser on a non-compliant, fleeing suspect under such non-threatening circumstances constituted the excessive use of force in violation of the Fourth Amendment.

In contrast, the circumstances of Wick's conduct were even more threatening than the circumstances of the plaintiff's conduct in *Jones*. Campbell had just witnessed Wick brandish a pocket knife threatening two individuals, and Campbell knew Wick still possessed the knife. Wick refused Campbell's commands to stop and he continued to walk away from, and evade Campbell. Even after Wick stopped, he refused to comply with Campbell's commands to place his hands behind his back and to submit to his arrest. Wick yelled profanities at

---

[1]The events in *Jones* tragically escalated beyond the officer's initial use of his taser, and the plaintiff died from multiple officers' subsequent continued use of multiple tasers on the plaintiff. Nonetheless, the court found the pursuing officer's initial use of his taser was reasonable.

Campbell, told Campbell he was not going to comply, and continued to refuse commands to place his hands behind his back.

Based on the foregoing, and in view of the subsequent decision in *Jones* upholding the reasonableness of the officer's use of a taser in the less threatening circumstances of the *Jones* case, the law in the Ninth Circuit existing as of the date of Campbell's conduct towards Wick suggests that Campbell's similar use of a taser on a non-compliant fleeing suspect under even more threatening circumstances than those in *Jones*, was also acceptable as reasonable. *Jones* offers no other decisional law authority holding that the use of a taser in an analogous situation with even more threatening circumstances was excessive. And the Court finds no other Ninth Circuit case that would have put Campbell on notice that his similar use of a taser on Wick to stop and subdue Wick under the threatening circumstances Campbell faced was unreasonable or excessive, and a violation of Wick's rights. Therefore, Campbell is entitled to qualified immunity for his initial use of the taser to subdue and gain control of Wick, and attempt to obtain his compliance.

After Campbell's initial use of his taser, Wick continued to physically struggle against the officers' efforts to restrain him, and he resisted their efforts to put him in handcuffs. Up until the point at which Campbell discharged his taser a second time, Wick's physical resistance was successfully preventing the officers

from applying handcuffs to Wick's wrists. Additionally, Campbell knew Wick was still in possession of the knife he had brandished moments before. Wick's conduct posed a continued, escalated degree of threat to the officers given that Wick continued resisting arrest. Under these circumstances, and for the reasons discussed under then-existing decisional law, the Court finds Campbell's second discharge of his taser did not violate a clearly establish right that Wick possessed under the circumstances that Wick created at the time of the second discharge.

Prior to Wick's arrest on January 24, 2015, several other Ninth Circuit decisions had been issued relative to a law enforcement officer's use of a taser. In *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) the Ninth Circuit analyzed circumstances where an officer used a taser on a person standing twenty to twenty-five feet away from the officer, facing away from the officer, and who posed no appreciable threat. In its decision on November 30, 2010, the Ninth Circuit concluded the use of the taser in those circumstances constituted excessive force. 630 F.3d at 832.

The Ninth Circuit had also issued decisions regarding the use of a taser on a non-violent person who was resisting the officers' physical efforts. In *Brooks v. City of Seattle*, 661 F.3d 433 (9th Cir. 2011) the officers confronted a pregnant woman sitting inside her vehicle and who had refused to sign a traffic citation for speeding. The officers attempted to physically remove her from her vehicle, but

she physically resisted by stiffening her body and holding the steering wheel to prevent the officers from moving her. At that point one of the officers discharged his taser on the woman three times in less than a minute. In its decision on October 17, 2011, the Ninth Circuit concluded the officer's use of a taser in that manner and under those circumstances was unreasonable and excessive. 661 F.3d at 446.

In *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) the officers were dispatched to respond to a domestic disturbance. At the moment the officers sought to take the husband into custody, the wife was standing between the officers and her husband. As one officer moved towards the husband the wife put her arms up to prevent the officer from running into her chest. Consequently, the officer, without warning, discharged his taser on the wife. 661 F.3d at 439. In its decision issued October 17, 2011, the Ninth Circuit concluded that the officer's use of the taser in those circumstances was excessive. 661 F.3d at 451.

Finally, on September 6, 2013, the Ninth Circuit issued a decision concluding that an officer's use of a taser on a suspect who did not pose any immediate threat to anyone's safety, who was not actively resisting or attempting to escape, and who was not warned of the use of a taser, constituted the excessive use of force. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013).

But here, the events on January 24, 2015, and the circumstances of Wick's conduct and behavior posed a greater and more immediate threat of harm than that

17

which the individuals posed in the circumstances that existed in the facts of either *Bryan*, *Brooks*, *Mattos*, or *Gravelet-Blondin*. Campbell had just witnessed Wick threaten two people with a knife, and he knew Wick was still in possession of the knife. And Wick was actively resisting and refusing to submit to his arrest despite the efforts of three officers – Campbell, Houppert and Martini – trying to gain physical control of Wick. His physical resistance was successfully preventing Defendants from gaining Wick's compliance and their physical control of Wick. The differences in the facts of Wick's conduct as compared to the facts in any of the four referenced cases decided by the Ninth Circuit preclude those cases from clearly establishing that on January 24, 2015, Campbell's conduct and his second discharge of his taser constituted the excessive use of force. Those cases did not provide any indication as to whether the use of a taser against an individual under more threatening circumstances would also be excessive. The facts of those prior cases would not have put Campbell on notice that his conduct violated Wick's Fourth Amendment rights. And the Court also does not find further decisional law existing as of January 24, 2015, that would have given Campbell fair notice that his conduct was excessive. Therefore, Campbell is entitled to qualified immunity with respect to his second discharge of his taser.

Finally, Wick alleges that after Campbell's second discharge of his taser Houppert and Martini used excessive force moving his arms to place them in

handcuffs. But Campbell's affidavit establishes that after he deployed his taser the second time "Martini and Houppert were able to get handcuffs on Mr. Wick[,]" (doc. 31-1 at ¶ 13), and the Court finds the videos of Wick's arrest that Defendants submitted do not support Wick's allegations that Houppert and Martini used excessive force to place the handcuffs on Wick's wrists. In response to Defendants' summary judgment motion and evidentiary materials, Wick has not filed any of his own evidentiary material to identify a genuine issue of material fact as to Houppert and Martini's conduct. Again, because the officers had probable cause to arrest Wick they also possessed authority to use some degree of physical force to put him in handcuffs. *Graham v. Connor*, 490 U.S. 386, 396 (1989). There are no evidentiary materials in the record that suggest Houppert and Martini's conduct in placing Wick's wrists in handcuffs was excessive, or was a violation of a clearly established right of which Houppert and Martini should have been aware at that time.

    In sum, in view of the requirement that the Court must be able to identify a prior case law decision where an officer acting in a similar manner as Defendants under similar circumstances was held to have violated the Fourth Amendment, the Court finds no prior and sufficiently similar case exists which clearly established Wick's rights under the circumstances of his behavior and the threat of harm he posed. The Court cannot conclude that based on existing precedent a reasonable

officer in Defendants' positions would have understood, beyond debate, that the act of using a taser twice to control a defiant, non-compliant, threatening individual in those circumstances, and placing his wrists in handcuffs constituted the use of excessive force. Qualified immunity is designed to protect officers from liability in situations involving such a "hazy border between excessive and acceptable force." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 312 (2015) (citation and quotation omitted).

## IV. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion for summary judgment be GRANTED based on qualified immunity, and Wick's claims against them be DISMISSED.

DATED this 12th day of December, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge